IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ANTHONY ARNOLD,

      Plaintiff,

  v.

M. S. EVANS, et al.,

      Defendants.

_____/

No. C 08-1889 CW (PR)

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT;
DENYING PLAINTIFF'S RULE
56(D) MOTION; AND DENYING AS
MOOT PLAINTIFF'S MOTION FOR
EVIDENTIARY HEARING

(Docket nos. 23, 36, 39)

INTRODUCTION

On April 8, 2008, Plaintiff Anthony Arnold, a state prisoner currently incarcerated at Salinas Valley State Prison (SVSP), filed a pro se prisoner complaint under 42 U.S.C. § 1983.

The Court reviewed the complaint pursuant to 28 U.S.C. § 1915(a) and dismissed it with leave to amend, finding that Plaintiff's allegations did not support a due process claim against Defendants.  On December 17, 2008, Plaintiff filed his amended complaint against Defendants SVSP Warden M. S. Evans, Chief Deputy Warden G. A. Neotti, Chief Deputy Warden A. Hedgpeth and Captain D. M. Mantel.  Plaintiff alleges that he was placed in administrative segregation (ad-seg) on March 16, 2006 "pending the completion of an investigation into alleged involvement in promoting/participation in gang/disruptive group activity on a sensitive needs yard at Salinas Valley State Prison."  (Am. Compl. at 3.)  He alleges that he was kept in ad-seg until January 25, 2007.  Plaintiff claims he was placed in long-term administrative segregation without a fair hearing and on the basis of evidence that is unreliable and insufficient in violation of his due process rights.  Plaintiff seeks monetary damages and injunctive

United States District Court
For the Northern District of California

relief.

In its January 25, 2010 Order of Service, the Court reviewed the amended complaint and found that Plaintiff stated a cognizable due process claim against Defendants Evans, Neotti, Hedgpeth and Mantel stemming from his placement and retention in ad-seg based on alleged gang affiliation.

On June 28, 2010, Defendants filed a motion for summary judgment (docket no. 23) on the grounds that Plaintiff did not have a liberty interest sufficient to trigger procedural due process protection, that even if Plaintiff had a liberty interest he was given all of the process he was due, and that Defendants are entitled to qualified immunity.

On September 9, 2010, Plaintiff filed a motion entitled, "Request for Discovery Protective Order and Hearing Re: Alleged Gang Affiliation" (docket no. 36). He requests that the Court compel Defendants to share confidential portions of his central file and any other information pertinent to his alleged gang affiliation. Defendants had withheld these documents under the official-information privilege after Plaintiff's discovery requests. The Court construes Plaintiff's September 9, 2010 motion as a request under Federal Rule of Civil Procedure 56(d) to defer the resolution of the summary judgment motion pending resolution of his discovery requests.[1]

On September 9, 2010, Plaintiff filed a motion for evidentiary hearing (docket no. 39). In this motion Plaintiff requests a

---

[1] Former Federal Rule of Civil Procedure 56(f) was amended in 2010. It is now set forth in Rule 56(d). "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's note.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

hearing to "assess the credibility of witnesses and resolve material facts in dispute," apparently in connection with Plaintiff's Rule 56(d) motion.

On September 24, 2010, Defendants filed a memorandum in opposition to Plaintiff's Rule 56(d) motion, arguing that Plaintiff failed to meet and confer with opposing counsel and that the withheld information must remain confidential under the official-information privilege. They further argue that Plaintiff's segregation was administrative and not a punitive response to his alleged gang affiliation (thereby making central file documents related to the gang investigation irrelevant). Finally, Defendants argue that segregation was necessary to protect the safety of the confidential informants who implicated him, and to ensure the effectiveness of gaining intelligence from future confidential informants.

On November 1, 2010, Plaintiff filed an opposition to Defendants' motion for summary judgment. On November 17, 2010, Defendants filed a reply.

Having considered the papers filed by the parties, the Court DENIES Plaintiff's Rule 56(d) motion, GRANTS Defendants' motion for summary judgment, and DENIES Plaintiff's remaining motion for an evidentiary hearing as moot.

BACKGROUND

The following facts are taken from Plaintiff's amended complaint as well as the declarations and exhibits in support of Defendants' motion for summary judgment.

As mentioned above, Plaintiff claims that his placement in ad-seg from March 16, 2006 to January 25, 2007 was a violation of his

3

constitutional right to due process.  SVSP officials provided

Plaintiff with six rationales for retaining him in ad-seg.  The

following facts are organized by the periods of time he was housed

in ad-seg.  For each period of time, an Institutional

Classification Committee (ICC) gave Plaintiff a different reason

for being segregated, although these reasons were all related to

Plaintiff's alleged gang affiliation.

I.    Pending Investigation: March 16, 2006 to July 12, 2006

On March 15, 2006, Sergeant Thomas wrote a memorandum to

Defendant Mantel stating that two inmates had accused Plaintiff of

gang activity.  On March 16, 2006, SVSP officials launched an

investigation of Plaintiff's alleged gang affiliations.

On March 16, 2006, Plaintiff was placed in ad-seg "pending the

completion of an investigation into alleged involvement in

promoting/participation in gang/disruptive group activity on a

sensitive needs yard" at SVSP.  (Am. Compl. at 3.)  Plaintiff was

notified of the reasons for his segregation on Form CDC 114-D on

March 16, 2006.  (Mot. for Summ. J., Ex. B.)  An ICC hearing was

held on March 23, 2006.  Regarding this ICC hearing and each of the

subsequent five hearings, Defendants state that Plaintiff received

seventy-two hours of notice for the purpose of the review, and that

normal ICC practices are to permit the inmate to "present his

views" at the hearing.  (Noll Decl. ¶¶ 2, 3; Moore Decl. ¶ 2;

Neotti Decl. ¶¶ 2, 3.)  Plaintiff contends his six ICC hearings

"consisted of defendants reading their findings to plaintiff and

giving plaintiff a copy of their findings," that Defendants "did

not interview plaintiff regarding the information they relied [on]

in reaching their decision," and that each ICC hearing "was

United States District Court
For the Northern District of California

conducted in a rote and perfunctory manner, in so much as the committee did not make any individualized finding whether or not plaintiff had the tattoo lips on his body or that plaintiff was a gang associate/or posed any real threat to the safety of others or institution security." (Opp'n to Mot. for Summ. J. at 6-7.)

At the March 23, 2006 hearing, the ICC concluded that Plaintiff should remain in ad-seg until the investigation had been completed to preserve its integrity and for prisoner safety. On July 12, 2006, the investigation was completed.

II. Pending RVR Process: July 13, 2006 to September 6, 2006

On July 12, 2006, upon completion of the investigation, Sergeant Thomas submitted a confidential memorandum to Defendant Mantel recommending that Plaintiff remain in ad-seg because of corroborating statements from confidential informants regarding Plaintiff's gang affiliation.

The ICC held another hearing on July 20, 2006, during which Plaintiff was given an opportunity to present his views. The ICC concluded that Plaintiff should remain in ad-seg during the disciplinary proceedings that were to follow the investigation.

On July 25, 2006, prison officials issued Plaintiff a Rules Violation Report (RVR) which explained that the investigation "concluded that Inmate ARNOLD knowingly promoted and attempted to recruit SNY [sensitive needs yard] inmates for the 2-5 disruptive group." (Am. Compl., Ex. 8.) Three Confidential Information Disclosure Forms (CIDFs) dated July 25, 2006, stated: "Source (1): Identified as recruiting Hispanic inmates to join 2-5 gang," "Source (2): Identified as orchestrating 2-5 activities on Facility A-SNY," and "Source (3): Identified as a 2-5 gang member." (Opp'n

to Mot. for Summ. J., Ex. 1-3.)

On August 8, 2006, SVSP officials held Plaintiff's RVR hearing and found him guilty of promoting gang activity in the sensitive needs yard.  On August 28, 2006, Plaintiff challenged this finding by filing a 602 inmate appeal.  In a CIDF dated September 5, 2006, SVSP officials advised Plaintiff, "You have been identified as a 2-5 Gang Leader that used his influence to cause the assaults of other inmates who tried to join the 2-5 gang.  Your position of leadership determines if the 2-5 recruit is successful in achieving gang membership.  Per your position, you enforce a code that requires 2-5 gang members to be armed at all times."  (Opp'n to Mot. for Summ. J., Ex. 4.)  In a second CIDF, SVSP officials advised Plaintiff, "You have been identified by multiple sources as being a member of the Disruptive Group known as '2-5'.  You also have a pair of lips tattoo which has proven to be an identifier of those belonging to the '2-5'."  (Opp'n to Mot. for Summ. J., Ex. 5.)

III. Awaiting Parole Consideration: September 7, 2006 to October 25, 2006

On September 6, 2006, SVSP officials told Plaintiff he would remain in ad-seg pending his transfer to an alternate Level IV institution special needs yard because he was a threat to the safety and security of the prison.  (Kwong Decl., Ex. H.)  On September 7, 2006, the ICC decided to retain Plaintiff in ad-seg pending an October 13, 2006 parole consideration hearing.

On October 4, 2006, Defendant Hedgpeth partially granted Plaintiff's 602 appeal, finding that "the disciplinary findings did not address the reliability of the source and the validity of the

United States District Court
For the Northern District of California

information" with respect to the confidential informants who implicated Plaintiff, as required by CCR Section 3084.5 (h)(2)(C). (Am. Compl., Ex. 3.)  Because of this violation in the RVR disciplinary hearing process, Defendant Hedgpeth ordered the RVR retyped and reissued within fifteen days, and ordered that Plaintiff be afforded all of his procedural due process rights during the new disciplinary proceeding.

IV.   Known Enemies: October 26, 2006 to November 15, 2006

On October 26, 2006, the ICC held another hearing and gave Plaintiff an opportunity to present his views.  The ICC decided to retain Plaintiff in ad-seg pending his transfer to an SVSP Security Housing Unit (SHU) because Plaintiff had known enemies in sensitive needs yards at institutions across the state.

On November 7, 2006, Classification Services Representative (CSR) D. Selvy prevented Plaintiff's transfer to a SHU because "the existence of enemies in other institutions in itself is not reason for SHU indeterminate placement." (Mot. for Summ. J., Ex. J.)  CSR D. Selvy authorized a sixty day extension of Plaintiff's placement in ad-seg.

V.   Pending Transfer to Another Prison: November 16, 2006 to December 12, 2006

On November 16, 2006, the ICC again held a hearing relating to Plaintiff's segregation status and gave him an opportunity to present his views.  Because Plaintiff had known enemies at SVSP, the ICC decided to transfer Plaintiff to a sensitive needs yard at another prison pending review by a CSR.  On December 5, 2006, CSR B. A. Crawford concluded that Plaintiff had no known enemies at SVSP and that other prisons could not take him.  Crawford decided

**United States District Court**
For the Northern District of California

Plaintiff should be moved back to the sensitive needs yard at SVSP.

VI.   Plaintiff's Concern for His Own Safety: December 13, 2006 to January 25, 2007

On December 13, 2006, before Plaintiff could return to the sensitive needs yards at SVSP, he informed Sergeant Johnson that he feared for his safety at the sensitive needs yards because four inmates "were all part of a conspiracy to have him placed into AdSeg," and requested that each "be placed on [t]he CDC 812 identifying each as a known enemy."  (Mot. for Summ. J., Ex. M.)[2] He was thereafter retained in ad-seg.

On January 17, 2007, the ICC held a hearing during which Plaintiff was given an opportunity to present his views.  Plaintiff was notified he was to remain in ad-seg for his own safety and for the safety of others.

On January 25, 2007, Plaintiff had another hearing before the ICC where he was given the opportunity to present his views. Plaintiff was thereafter returned to the sensitive needs yard.

Plaintiff was served a reissued RVR more than four months later, on February 22, 2007, in violation of the fifteen day deadline set by his partially granted appeal.  Plaintiff's rehearing was held on March 28, 2007. Plaintiff was found guilty of "Promoting Gang Activity on a Sensitive Needs Yard" but was not disciplined "due to time constraints not being met."  (Mot. for Summ. J., Ex. Q.)  Specifically, the "disciplinary [paperwork] was not served on Inmate ARNOLD within 15 days of discovery."  Id.

On April 8, 2008, Plaintiff filed the present action.

---

[2]  Plaintiff does not address these facts in his amended complaint or opposition.

DISCUSSION

I.   Legal Standard for Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show

9

> that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Nissan, 210 F.3d at 1106; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

**United States District Court**
For the Northern District of California

II.  Plaintiff's Request for a Continuance for Discovery Pursuant to Rule 56(d)

Rule 56(d) provides that if a party opposing summary judgment demonstrates a need for further discovery in order to obtain facts essential to justify the party's opposition, the trial court may deny the motion for summary judgment or continue the hearing to allow for such discovery.  See Fed. R. Civ. P. 56(d); Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).  In making a Rule 56(d) motion, a party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment." Id. at 853.  Summary judgment is disfavored where relevant evidence remains to be discovered, particularly in cases involving confined pro se plaintiffs.  Jones v. Blanas, 393 F.3d 918, 930 (9th Cir. 2004); Klingele v. Eikenberry, 849 F.2d 409, 412 (9th Cir. 1988). Summary judgment in the face of requests for additional discovery in such cases is appropriate only where such discovery would be "fruitless" with respect to the proof of a viable claim.  Jones, 393 F.3d at 930; Klingele, 849 F.2d at 412.

Rule 56(d) provides a device for litigants to avoid summary judgment when the non-movant needs to discover affirmative evidence necessary to oppose the motion.  See Garrett v. San Francisco, 818 F.2d 1515, 1518 (9th Cir. 1987).  When a party moves for summary judgment before the opposing party has had a "realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any [Rule 56(d)] motion fairly freely." Burlington Northern & Santa Fe Ry. Co. v. The Assiniboine, 323 F.3d 767, 774 (9th Cir. 2003).  Rule 56(d) requires an affidavit which sets forth the information sought and how it would preclude summary judgment by creating a genuine issue of material fact.  See Hall v.

11

<u>Hawaii</u>, 791 F.2d 759, 761 (9th Cir. 1986); <u>see also</u> <u>Margolis</u>, 140 F.3d at 853-54 (district court correctly denied motion for continuance to engage in further discovery under former Rule 56(f) where plaintiff did not provide any basis or factual support for his assertions that further discovery would lead to the facts and testimony he described, and his assertions appeared based on nothing more than "wild speculation").

Here, by filing his discovery motion, Plaintiff meets Rule 56(d)'s procedural requirement that he submit an "affidavit" setting forth the discovery requested.  Although Plaintiff's discovery motion is not entitled "Affidavit in Support of Rule 56(d) Request," the Ninth Circuit has stated that a court is free to construe a discovery motion as a request under and in compliance with former Rule 56(f).  <u>See</u> <u>Hancock</u>, 787 F.2d at 1306 n.1.

Plaintiff's Rule 56(d) motion seeks all the documents contained in the confidential portion of his central file concerning his stay in administrative segregation.  These files include the "Notice of Critical Information -- Confidential Enemies," "Confidential Memorandum dated July 12, 2006" and "Confidential Memorandum dated March 21, 2006."  (Pl.'s Mot. at 1-3.)

As the Ninth Circuit stated in <u>Continental Maritime v. Pacific Coast Metal Trades</u>, 817 F.2d 1391, 1395 (9th Cir. 1987), under former Rule 56(f) "the party seeking a continuance bears the burden to show what specific facts it hopes to discover that will raise an issue of material fact."  <u>Id.</u>  Plaintiff has not met this burden. Plaintiff fails to demonstrate how "additional discovery would have revealed specific facts precluding summary judgment."  <u>See</u> <u>Tatum v.</u>

12

<u>City and County of S.F.</u>, 441 F.3d 1090, 1101 (9th Cir. 2006).  The requested documents are sought without explanation of what specific, material facts these documents will likely disclose; Plaintiff only states in conclusory fashion that they will help him offer arguments about the reliability of the evidence used by Defendants.  (Pl.'s Mot. at 1.)  Specifically, Plaintiff "seeks to find out what was said, because [Defendants] used this information to place plaintiff in Ad-Seg."  (Pl.'s Reply to Defs.' Opp'n to Pl.'s Mot. at 2.)  Such conclusory allegations are not sufficient under Rule 56(d).  Thus, Plaintiff has not met his burden under Rule 56(d).

In addition, Plaintiff's individual requests do not show adequate cause to grant the discovery motion.  Plaintiff's requests cannot be granted because they seek the confidential enemies list involving inmates who are not parties to this case.  Defendants argue that the documents Plaintiff seeks are protected by the official-information privilege.  Defendants also claim that Plaintiff failed to "meet and confer" with their counsel in violation of Federal Rule of Civil Procedure 37(a)(1).[3]  (Defs.' Opp'n to Pl.'s Mot. at 1.)

In his opposition to the motion for summary judgment, Plaintiff asserts in conclusory fashion that Defendants are not entitled to summary judgment because there are still genuine issues of material fact.  He claims that the ICC "interview[s] consisted of defendants reading their findings to plaintiff and giving plaintiff a copy of the finding," yet he does not specifically

---

[3]   Defendants also cite Local Rule 37-251(b), which is a local rule for the Eastern District of California.

United States District Court
For the Northern District of California

declare under penalty of perjury that he was not given an opportunity to express his views.  Nor does he point to the existence of discoverable evidence that would show he was unable to present his views.  (Opp'n to Mot. for Summ. J. at 6.)  Because Plaintiff has not shown that relevant facts remain to be discovered, the denial of a continuance is appropriate under the standards contained in Rule 56(d) and is not a violation of Plaintiff's due process rights.  Therefore, the Court DENIES Plaintiff's request for a continuance for discovery pursuant to Rule 56(d).

The Court will now address the merits of the Defendants' motion for summary judgment.

III. Applicable Law and Discussion

    A.    Due Process

        1.    Liberty Interest

Interests protected by the Due Process Clause may arise from two sources -- the Due Process Clause itself and laws of the states.  See Meachum v. Fano, 427 U.S. 215, 223-27 (1976).  Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process Clause itself, whether or not they are authorized by state law.  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  The hardship associated with ad-seg, such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time, is not so severe as to violate the Due Process Clause itself.  See Toussaint v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987) (Toussaint V).

However, deprivations authorized by state law that are less

14

**United States District Court**
For the Northern District of California

severe or more closely related to the expected terms of confinement may amount to deprivations of a procedurally protected liberty interest, provided that (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, i.e. give the inmate a kind of right to avoid it, and (2) the liberty in question is one of "real substance." See Sandin, 515 U.S. at 477-78.  For example, the Supreme Court recently held that the indefinite placement of inmates in a "supermax" facility, where inmates are not eligible for parole consideration, imposes an "atypical and significant hardship within the correctional context." Wilkinson v. Austin, 545 U.S. 209, 223-24 (2005).

Ad-seg may or may not deprive a prisoner of a liberty interest.  In Sandin, thirty days of "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486; see also Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest.").  In Serrano, ad-seg was found to constitute an atypical, significant deprivation but only because Serrano, a disabled prisoner, was held in a "non-handicapped-accessible" room. Serrano, 345 F.3d at 1078-79.

Here, Plaintiff argues that his ten months in ad-seg constituted an "atypical and significant hardship." (Opp'n to Mot. for Summ. J. at 5 (quoting Sandin, 515 U.S. at 486).)  The Court need not decide whether Plaintiff's ten months in ad-seg deprived him of a liberty interest of "real substance," Sandin, 515 U.S. at 477-87, because even if an "atypical and significant hardship" was imposed, id. at 486, Plaintiff received all of the due process to

which he was entitled.

2.   Process Due to Plaintiff

Where a protected liberty interest is found in freedom from ad-seg, inmates are entitled to the protections of procedural due process, which include (1) an informal non-adversary hearing within a reasonable time after the prisoner is segregated, (2) notice to the inmate of the charges or the reasons segregation is being considered, (3) an opportunity for the inmate to present his views, and (4) some sort of periodic review of the inmate's confinement. See Toussaint V, 801 F.2d at 1100-01.

In the present case, Plaintiff was afforded six informal, non-adversarial ICC hearings while held in ad-seg.  The first hearing took place on March 23, 2006, seven days after Plaintiff was first placed in ad-seg.  This was within a reasonable time after he was segregated.[4]  See id. at 1100 n.20 ("72 hours of segregation constitutes a 'reasonable time.'"); see also Hewitt v. Helms, 459 U.S. 460, 476 n.8 (1983) ("The proceeding must occur within a reasonable time following an inmate's transfer, taking into account the relatively insubstantial private interest at stake and the traditionally broad discretion of prison officials").

Second, Plaintiff was notified of the charges against him when initially placed in ad-seg by way of Form CDC-114D.  (Mot. for Summ. J., Ex. B.)  Plaintiff was also notified of the reasons he was kept in ad-seg at each ICC hearing.  Plaintiff does not dispute this fact.

Third, Plaintiff was given an opportunity to present his

_____

[4]   Plaintiff does not argue that the initial hearing was unreasonably delayed.

16

United States District Court
For the Northern District of California

views.  Plaintiff argues that at the ICC hearings Defendants merely read their findings to Plaintiff and gave him a copy of the findings and that the process was "rote and perfunctory."  (Opp'n to Mot. for Summ. J. at 6-7.)  Despite these conclusory allegations, Plaintiff does not specifically declare, or point to any evidence, that he was not given an opportunity to present his views.  Affidavits supporting Defendants' motion for summary judgment indicate that allowing the inmate to present his views during ICC hearings is normal practice for SVSP officials. Plaintiff thus had six opportunities to present his views orally. Additionally, Plaintiff does not allege that he made any attempt to make his views known through a written statement.  See Hewitt, 459 U.S. at 476 (finding an inmate's written statement is generally a sufficient presentation of his views).  Thus, Plaintiff's conclusory allegations that the ICC hearing process was "rote and perfunctory" are insufficient to create a disputed issue of material fact.

Finally, SVSP officials periodically reviewed Plaintiff's confinement and afforded Plaintiff ICC hearings on March 23, 2006; 119 days later on July 20, 2006; forty-nine days later on September 7, 2006; forty-nine days later on October 26, 2006; twenty-one days later on November 16, 2006; and seventy days later on January 25, 2007.  Periodic reviews of confinement every 120 days "satisfies due process."  Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (Toussaint IV).

Therefore, Defendants did not violate Plaintiff's due process rights by failing to review periodically his confinement in ad-seg.

3.   "Some Evidence" Requirement

In <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985), the Supreme Court held that disciplinary proceedings do not satisfy due process requirements unless there is "some evidence" in the record to support the findings of the prison disciplinary board.  The Ninth Circuit requires that "some evidence" also support a decision to place an inmate in segregation for administrative reasons.  <u>See</u> <u>Toussaint V</u>, 801 F.2d at 1104.  The relevant inquiry under this "minimally stringent" standard is whether there is any evidence in the record that could support the decision-makers' conclusion.  <u>Cato</u> <u>v. Rushen</u>, 824 F.2d 703, 705 (9th Cir. 1987).  Courts show great deference to prison officials that have placed a prisoner in ad-seg so the officials can "act swiftly on the basis of little information to avert dangerous situations."  <u>Id.</u>

Plaintiff's initial placement in ad-seg was based on statements by other inmates that Plaintiff was involved in a gang. Corroborating statements from informants regarding Plaintiff's gang affiliation formed the basis for his retention in ad-seg at the subsequent five ICC hearings.  Therefore, Defendants had "some evidence" with which to retain Plaintiff in ad-seg based on his alleged gang affiliation.  <u>Hill</u>, 472 U.S. at 455.

Plaintiff argues that the evidence supporting his retention in ad-seg based on his alleged gang affiliation was insufficient because the CIDFs lack detail "or any indicia or [sic] reliability."  (Opp'n to Mot. for Summ. J.  at 3.)   Yet each CIDF Plaintiff received implicated him as an active member of a gang, and indicated the anonymous sources were reliable because either: (1) "This source has previously provided confidential information

which has proven to be true;" (2) "More than one source independently provided the same information;" (3) "This source incriminated himself/herself in a criminal activity at the time of providing the information;" or (4) "Part of the information provided by the source(s) has already proven to be true." (Opp'n to Mot. for Summ. J., Ex. 1-5.)

Because Plaintiff was afforded informal non-adversary hearings within a reasonable time after being segregated, had notice of the charges, had opportunities to present his views, had periodic review of his confinement, and was confined based on "some evidence," Plaintiff received all of the due process to which he was entitled.

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that he has not established a genuine issue for trial concerning his claim of a due process violation stemming from his placement in ad-seg from March 16, 2006 to January 25, 2007. Therefore, Defendants are not entitled to summary judgment as a matter of law. See Celotex Corp., 477 U.S. at 324.

B.   Qualified Immunity

In the alternative, Defendants claim that they are entitled to summary judgment based on qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The threshold question in qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the

United States District Court
For the Northern District of California

facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was "clearly established." <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 818 (2009) (overruling the sequence of the two-part test that required determination of a deprivation first and then whether such right was clearly established, as required by <u>Saucier</u> and holding that court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case).  Where there is no clearly established law that certain conduct constitutes a constitutional violation, the defendant cannot be on notice that such conduct is unlawful. <u>Rodis v. City and County of S.F.</u>, 558 F.3d 964, 970-71 (9th Cir. 2009)(applying <u>Pearson</u> to find no clearly established right before evaluating whether there was a deprivation).  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Saucier</u>, 533 U.S. at 202.

Here, the Court has found that Defendants' actions do not rise to the level of a constitutional violation.  However, even if Plaintiff's rights had been violated and his rights were clearly established at the time of the violation, Defendants are entitled to qualified immunity because they have produced sufficient evidence showing that they could have believed that their actions were reasonable based on the circumstances they confronted.

Plaintiff alleges that Defendants placed him in ad-seg based on insufficient evidence and without proper process. Defendants' decision to retain Plaintiff in ad-seg was based on corroborating statements from three informants that Plaintiff was involved in and recruiting for a prison gang. Plaintiff was afforded timely and periodic ICC hearings. A reasonable prison official in Defendants' position could have thought it was necessary to place Plaintiff in administrative confinement to maintain the integrity of an ongoing investigation into the gang allegations, and to protect the safety of prison staff and other inmates. Therefore, Defendants would not have been on notice that their conduct was unlawful. See Rodis, 558 F.3d at 970-71.

Accordingly, Defendants are entitled to qualified immunity with respect to Plaintiff's due process claim and thus are entitled to summary judgment as a matter of law.

CONCLUSION

For the foregoing reasons,

1.   Plaintiff's Rule 56(d) motion (docket no. 36) is DENIED.

2.   Defendants' motion for summary judgment (docket no. 23) is GRANTED.

3.   Plaintiff's motion for evidentiary hearing (docket no. 39) is DENIED as moot.

4.   The Clerk of the Court shall enter judgment, terminate all pending motions, and close the file. Each party shall bear his own costs.

5.   This Order terminates Docket nos. 23, 36 and 39.

IT IS SO ORDERED.

Dated: 2/22/2011

CLAUDIA WILKEN
United States District Judge

1

2

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

3

4

ANTHONY ARNOLD,

Case Number: CV08-01889 CW

Plaintiff,

5

v.

**CERTIFICATE OF SERVICE**

6

M.S. EVANS, WARDEN, ET AL. et al,

7

Defendant.

8

_____/

9

10

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

11

12

That on February 22, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

13

14

15

16

Anthony  Arnold H-22763
Salinas Valley State Prison
P.O. Box 1050
Soledad,  CA 93960

17

Dated: February 22, 2011

18

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California